BENJAMIN M. O'DONNELL (SBN 309119)
LAURIE A. TRAKTMAN (SBN 165588)
STEVEN M. REHAUT (SBN 121710)
**GILBERT & SACKMAN**
**A Law Corporation**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Facsimile: (323) 937-3139
Email: bodonnell@gslaw.org
Email: lat@gslaw.org
Email: smr@gslaw.org

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF SHEET METAL WORKERS' PENSION PLAN OF SOUTHERN CALIFORNIA, ARIZONA AND NEVADA; BOARD OF TRUSTEES OF SHEET METAL WORKERS' HEALTH PLAN OF SOUTHERN CALIFORNIA, ARIZONA AND NEVADA; BOARD OF TRUSTEES OF SHEET METAL WORKERS' LOCAL 88 JOINT APPRENTICESHIP AND TRAINING COMMITTEE; BOARD OF TRUSTEES OF SHEET METAL WORKERS LOCAL 88 RETIREES' SUPPLEMENTAL HEALTH CARE TRUST FUND; BOARD OF TRUSTEES OF SHEET METAL WORKERS' LOCAL 88 SECTION 401(k) PLAN; INTERNATIONAL ASSOCIATION OF SHEET METAL AIR, RAIL AND TRANSPORTATION WORKERS, LOCAL UNION NO. 88 UNION DUES CHECK-OFF AND VACATION PLAN; BOARD OF TRUSTEES OF SHEET METAL AND AIR CONDITIONING CONTRACTORS NATIONAL ASSOCIATION OF SOUTHERN NEVADA INDUSTRY FUND; BOARD OF TRUSTEES OF SHEET METAL WORKERS' LOCAL 88 UNIFIED CONSTRUCTION INDUSTRY COUNCIL FUND; and BOARD OF TRUSTEES OF SHEET METAL WORKERS' LOCAL 88 INDUSTRY STABILIZATION FUND, <br><br> Plaintiffs, <br><br> v. <br><br> MECHANICAL TEST AND BALANCE OF | Case No. 2:19-cv-5539 <br><br> **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR BREACH OF COLLECTIVE BARGAINING AGREEMENT; BREACH OF TRUST AGREEMENTS; AND VIOLATION OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA)** |

NEVADA CORPORATION; MECHANICAL TEST AND BALANCE, INC.; MECHANICAL TEST AND BALANCE OF NEVADA, LLC; FRANK ARONE, an individual; and DOES 1 through 10,

    Defendants.

Plaintiffs, Board of Trustees of Sheet Metal Workers' Pension Plan of Southern California, Arizona and Nevada ("Pension Plan"); Board of Trustees of Sheet Metal Workers' Health Plan of Southern California, Arizona and Nevada ("Health Plan"); Board of Trustees of Sheet Metal Workers' Local 88 Joint Apprenticeship and Training Committee ("JATC"); Board of Trustees of Sheet Metal Workers Local 88 Retirees' Supplemental Health Care Trust Fund ("Retirees Plan"); Board of Trustees of Sheet Metal Workers' Local 88 Section 401(k) Plan ("401(k) Plan"); International Association of Sheet Metal Air, Rail And Transportation Workers, Local Union No. 88 Union Dues Check-Off and Vacation Plan ("Dues and Vacation Plan"); Board of Trustees of Sheet Metal and Air Conditioning Contractors National Association of Southern Nevada Industry Fund ("Industry Fund"); Board of Trustees of Sheet Metal Workers' Local 88 Unified Construction Industry Council Fund ("Council Fund"); and Board of Trustees of Sheet Metal Workers' Local 88 Industry Stabilization Fund ("Stabilization Fund") (collectively referred to as the "Plans" or "Trust Funds"), aver as follows:

## JURISDICTION

1.      Jurisdiction in this Court is based on the exclusive jurisdiction of the District Courts to hear civil actions brought by a fiduciary pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145, to redress violations or enforce the terms of ERISA or a multiemployer plan governed by Section 502(e) of ERISA, 29 U.S.C. § 1132(e). Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in Section 502(f) of ERISA, 29 U.S.C. § 1132(f).

2.      Jurisdiction is also based on the jurisdiction of the District Courts to hear suits for violations of contracts between an employer and a labor organization, without regard to the amount in controversy or the citizenship of the parties, as provided in Section 301(a) of the Labor Management Relations Act, 1947, as amended ("LMRA"), 29 U.S.C. § 185(a).

3.     Venue is proper in this District Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and Section 301(a) of the LMRA, 29 U.S.C. § 185(a), in that this is the district in which certain of the Plans are administered, the signatory local unions maintain their offices, and the acts mentioned below took place.

**PARTIES**

<u>Plaintiffs</u>

4.     With the exception of the JATC, Dues and Vacation Plan, Industry Fund, Council Fund, and Stabilization Fund at all times mentioned in this complaint, the Plans have been jointly-trusteed, labor-management trust funds created and maintained pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). At all times mentioned in this complaint, the JATC has been a pooled trust fund created and maintained pursuant to Section 302(c)(7) of the LMRA, 29 U.S.C. § 186(c)(7). At all times mentioned in this complaint, the Dues and Vacation Plan has been a pooled trust fund created and maintained pursuant to Section 302(c)(4) of the LMRA, 29 U.S.C. § 186(c)(4). At all times mentioned in this complaint, the Industry Fund, Council Fund, and Stabilization Fund have been employer-trusteed trust funds established pursuant to Section 501(c)(6) of the Internal Revenue Code, 26 U.S.C. § 501(c)(6).

5.     The Pension Plan and 401(k) Plan are "employee pension benefit plans" and "multiemployer plans" as defined in Section 3(2)(A) and 3(37) of ERISA, 29 U.S.C. § 1002(2)(A) and (37)(A).  The Health Plan, JATC, and Retirees Plan are "employee welfare benefit plans" and "multiemployer plans" as defined in Section 3(1) and 3(37) of ERISA, 29 U.S.C. §§ 1002(1) and (37)(A).

6.     The Plans were created pursuant to separate agreements and declarations of trust ("Trust Agreements") executed and maintained pursuant to collective bargaining agreements between various employer associations and individual contractors located in the Southern California, Arizona and Nevada areas performing work in the sheet metal industry, an industry affecting commerce, and various local unions of the International Association of Sheet Metal, Air, Rail and Transportation Workers ("SMART"). As

described more fully below, the Plans are funded by contributions from employers who are signatory to the collective bargaining agreement.

7.    The administrative offices of the Pension Plan and the Health Plan are located at 111 North Sepulveda Boulevard, Suite 100, Manhattan Beach, California. The administrative offices of the Retirees Plan and the 401(k) Plan are located at Zenith American Solutions, Inc., 2250 S. Rancho Drive, Suite 295, Las Vegas, Nevada. The administrative offices of the JATC, Stabilization Fund, Dues and Vacation Plan are located at 2560 Marco Street, Las Vegas, Nevada. The administrative office of the Industry Fund is located at 2640 S. Jones Blvd Suite #4 Las Vegas, NV 89146.  The administrative office of the Council Fund is located at 1701 Whitney Mesa Dr. #101 Henderson, NV 89014.

Defendants

8.    Defendant MECHANICAL TEST AND BALANCE OF NEVADA CORPORATION ("MTB CORP.") is a corporation organized and existing under the laws of the State of Nevada, having its principal office and place of business at 2496 Peaceful Prairie Court, Las Vegas, Nevada, 89135. MTB CORP. provides test and balance services to the HVAC industry.

9.    MTB CORP. is an "employer" as defined in Section 3(5) of ERISA, 29 U.S.C. § 1002(5) and thus "obligated to make contributions to a multiemployer plan" within the meaning of Section 515 of ERISA, 29 U.S.C. § 1145. MTB CORP. is also an "employer" engaged in "commerce" in an "industry affecting commerce," as those terms are defined in Sections 501(1) and (3) of the LMRA, 29 U.S.C. § 142(1) and (3), and within the meaning of Section 301(a) of the LMRA, 29 U.S.C. § 185(a), or the agent acting in the interest of such an employer within the meaning of Section 501(3) of the LMRA, 29 U.S.C. § 142(3).

10.    Defendant MECHANICAL TEST AND BALANCE, INC. ("MTB, INC.") is a corporation organized and existing under the laws of the State of Nevada, having its principal office and place of business at the same location as MTB CORP. MTB, INC. provides test and balance services to the HVAC industry.

11.     MTB, INC. is an "employer" as defined in Section 3(5) of ERISA, 29 U.S.C. § 1002(5) and thus "obligated to make contributions to a multiemployer plan" within the meaning of Section 515 of ERISA, 29 U.S.C. § 1145. MTB, INC. is also an "employer" engaged in "commerce" in an "industry affecting commerce," as those terms are defined in Sections 501(1) and (3) of the LMRA, 29 U.S.C. § 142(1) and (3), and within the meaning of Section 301(a) of the LMRA, 29 U.S.C. § 185(a), or the agent acting in the interest of such an employer within the meaning of Section 501(3) of the LMRA, 29 U.S.C. § 142(3).

12.     Defendant MECHANICAL TEST AND BALANCE OF NEVADA, LLC ("MTB, LLC") is a Limited Liability Corporation organized and existing under the laws of the State of Nevada, having its principal office and place of business at the same address as MTB CORP. and MTB, INC. MTB, LLC provides test and balance services to the HVAC industry.

13.     MTB, LLC is an "employer" as defined in Section 3(5) of ERISA, 29 U.S.C. § 1002(5) and thus "obligated to make contributions to a multiemployer plan" within the meaning of Section 515 of ERISA, 29 U.S.C. § 1145. MTB, INC. is also an "employer" engaged in "commerce" in an "industry affecting commerce," as those terms are defined in Sections 501(1) and (3) of the LMRA, 29 U.S.C. § 142(1) and (3), and within the meaning of Section 301(a) of the LMRA, 29 U.S.C. § 185(a), or the agent acting in the interest of such an employer within the meaning of Section 501(3) of the LMRA, 29 U.S.C. § 142(3).

14.     The Plans are ignorant of the true names and capacities of the defendants named in this complaint as DOES 1 through 10, and therefore sue said defendants by such fictitious names. Plaintiffs will amend this complaint to allege the true names and capacities of said defendants once their identities are ascertained. In the meantime, Plaintiffs are informed and believe, and on the basis of such information and belief aver, that each of these fictitiously named defendants is responsible in some manner for the occurrences alleged herein, and that the damages alleged herein were proximately caused

by such defendants.

15.    Defendant FRANK ARONE ("ARONE") is President of MTB CORP., MTB, INC., and MTB, LLC ("Corporate Defendants"). ARONE is also a Director of MTB CORP. and MTB, INC. ARONE is also the Secretary and Treasurer of MTB, INC.

16.    ARONE is an "employer" as defined in Section 3(5) of ERISA, 29 U.S.C. § 1002(5) and thus "obligated to make contributions to a multiemployer plan" within the meaning of Section 515 of ERISA, 29 U.S.C. § 1145. MTB, INC. is also an "employer" engaged in "commerce" in an "industry affecting commerce," as those terms are defined in Sections 501(1) and (3) of the LMRA, 29 U.S.C. § 142(1) and (3), and within the meaning of Section 301(a) of the LMRA, 29 U.S.C. § 185(a), or the agent acting in the interest of such an employer within the meaning of Section 501(3) of the LMRA, 29 U.S.C. § 142(3).

17.    The Individual Defendants are responsible for running the day-to-day operations of the Corporate Defendants and are responsible for all decisions pertaining to the payment of contributions to the Plans, including decisions whether or not to pay such contributions.

18.    The Plans are informed and believe, and on the basis of such information and belief aver, that the Individual Defendants acted on behalf of and in the interest of the Corporate Defendants in all aspects of labor relations and in the Corporate Defendants' dealings and relations with the Plans, including but not limited to determining which employees the Corporate Defendants would report to the Plans, the number of hours upon which contributions would be reported as owing, and the amount of owed contributions that would be paid. The Individual Defendants authorized and made payments of employee benefit plan contributions from the Corporate Defendants to the Plans.

19.    The Plans are informed and believe, and on the basis of such information and belief aver, that at all times material to this Complaint MTB, LLC. and MTB, INC. held themselves out as continuations of MTB CORP.

20.    The Plans are informed and believe, and on the basis of such information and

belief aver, that at all times material to this Complaint MTB CORP., MTB, INC., and MTB, LLC. were affiliated business enterprises with a unity of interest and business purpose and operated as a single employer.

21. All three Corporate Defendants share a common address, phone number, and fax number.

22. All three Corporate Defendants share a common logo, which reads only, "Mechanical Test & Balance" with no distinction between "Corp.", "Inc.", or "LLC."

23. All three Corporate Defendants are fully or partially owned by Individual Defendant ARONE.

24. The Plans are informed and believe, and on the basis of such information and belief aver, that the Corporate Defendants share many of the same officers and shareholders and are dominated by the same individuals.

25. The Plans are informed and believe, and on the basis of such information and belief aver, that the Corporate Defendants share the same head of labor relations

26. The Plans are informed and believed, and on the basis of such information and belief aver, that the Corporate Defendants share the same employees who manage job assignments for the same employees at all three Corporate Defendants.

27. The Plans are informed and believe, and on the basis of such information and belief aver, that the Corporate Defendants share clerical workers including an office manager.

28. The Plans are informed and believe, and on the basis of such information and belief aver, that the Corporate Defendants share common premises, phone number, facilities, and equipment.

29. The Plans are informed and believe, and on the basis of such information and belief aver, that the Corporate Defendants have shared credit and extended interest-free loans to one another.

30. MTB CORP. became signatory to the Bargaining Agreement in 2006 which obligates MTB CORP. to contribute money to the Plans commensurate with the number of

hours its covered employees work, as alleged above. Individual Defendant ARONE executed the Bargaining Agreement on behalf of MTB CORP.

31.     MTB CORP.'s license was permanently revoked by the Nevada Secretary of State in 2010.

32.     Defendant ARONE incorporated MTB, INC. in 2008 and operated it as a continuation of MTB CORP.

33.     MTB, INC.'s license was revoked by the Nevada Secretary of State in 2016.

34.     Defendant ARONE incorporated MTB, LLC. in February 2013 and operated it as a continuation of MTB CORP. and MTB, INC.

35.     On August 15, 2013, Defendant ARONE sent a letter to the Plans representing to them that "Mechanical Test and Balance" had stopped performing work covered by the Bargaining Agreement as of June 2013.

36.     In fact, MTB, LLC continued to perform work covered by the Bargaining Agreements from June 2013 through December 2018.

37.     The Plans are informed and believe, and on the basis of such information and belief aver, that MTB, INC. and MTB, LLC were used in a sham effort to avoid MTB CORP.'s collective bargaining obligations.

38.     The Plans are informed and believe, and based on such information and belief aver, that in or about May 2013, after transferring work from MTB, INC. and MTB CORP. to MTB, LLC., the shareholders shut down MTB CORP. and MTB, INC.

39.     The Plans are informed and believe, and on the basis of such information and belief aver, that by signing the Bargaining Agreement, Corporate Defendants became eligible for some contracts and economic opportunities that they would not otherwise have been permitted to bid on.

40.     The Plans are informed and believe, and on the basis of such information and belief aver, that at the time MTB CORP. entered into the Bargaining Agreement, the Individual Defendants knew that it would give Corporate Defendants access to new contracts and economic opportunities.

41.     The Plans are informed and believe, and on the basis of such information and belief aver, that at the time the Corporate Defendants entered into the Bargaining Agreement with Local 88, the Individual Defendants knew that the Corporate Defendants could not afford to make the contributions required by the Bargaining Agreement and the Trust Agreements.

42.     The Plans are informed and believe, and on the basis of such information and belief aver, that at the time MTB CORP. entered into the Bargaining Agreement with Local 88, the Individual Defendants knew that MTB CORP.'s employees, including the Individual Defendants themselves, would be entitled to benefits from the defined benefit Pension Plan even if Corporate Defendants did not meet their obligation to contribute.

43.     The Plans are informed and believe, and on the basis of such information and belief aver, that at relevant times Corporate Defendants lacked the income or capital to meet their obligation to contribute under the Bargaining Agreement and the Trust Agreements.

44.     The Plans are informed and believe, and on the basis of such information and belief aver, that the Corporate Defendants have failed to hold regular board meetings.

45.     The Plans are informed and believe, and on the basis of such information and belief aver, that the Corporate Defendants have never kept minutes of board meetings or executive meetings that were held.

46.     The Plans are informed and believe, and on the basis of such information and belief aver, that the Corporate Defendants failed to maintain assets adequate to operate their businesses and pay debts as they matured, including obligations to contribute to the Plans described below.

47.     The Plans are informed and believe, and on the basis of such information and belief aver, that the Individual Defendants transferred money between the Corporate Defendants' accounts and their personal accounts without keeping complete transaction records.

48.     The Plans are informed and believe, and on the basis of such information and

belief aver, that the Individual Defendants transferred money between the Company's accounts and their personal accounts without promissory notes, written loan agreements, or records of a debt obligation.

49.    The Plans are informed and believe, and on the basis of such information and belief aver, that the Individual Defendants used Corporate assets for personal purposes.

50.    The Plans are informed and believe, and on the basis of such information and belief aver, that the Individual Defendants made decisions in the absence of a meeting of the Corporate Defendants' Boards.

51.    The Plans are informed and believe, and on the basis of such information and belief aver, that at all relevant times the Individual Defendants have been the qualifying individuals for state licensing and bond purposes, and the responsible managing officers for the Corporate Defendants.

52.    The Individual Defendants were the partners, joint venturers, employers, employees, actual and ostensible agents, and representatives of one another and, in doing the acts alleged, were acting on behalf of such partnership and joint venture, and within the course and scope, and the apparent course and scope, of such employment, agency, and representation and on behalf of such partnership and joint venture.

## THE OBLIGATION TO CONTRIBUTE

53.    MTB CORP. entered into, executed, and at all material times has been party to a written Collective Bargaining Agreement (the "Bargaining Agreement") with SMART Local Union No. 88 ("Local 88"). The Bargaining Agreement establishes and renews the Trust Agreements. The Plans have at all times been intended third party beneficiaries of the Bargaining Agreement. The Bargaining Agreement was signed on MTB CORP.'s behalf by ARONE as owner of MTB CORP.

54.    Under the Bargaining Agreement and Trust Agreements, an employer's monthly contributions to the Pension Plan, Health Plan, JATC, Retirees Plan, 401(k), Dues and Vacation Plan, Industry Fund, Council Fund, and Stabilization Fund are separately calculated by determining the total number of hours worked by the employer's employees

in the reporting month, and multiplying these total hours by the prescribed hourly contribution rates set forth in the Bargaining Agreement. Under the Bargaining Agreement and Trust Agreements, an employer's monthly contributions to the Dues and Vacation Plan are established as a deduction from wages.  Additionally, under the Bargaining Agreement and Trust Agreements, the employers make additional contributions to the 401(k) Plan, both as based on an hourly contribution rate specified in the Bargaining Agreement and from deductions from employee wages pursuant to, and in amounts specified in, wage deduction agreements signed by the employers' employees.

55.    The Bargaining Agreement and Trust Agreements obligate an employer to file monthly remittance reports with the Plans and to pay the Plans the contributions set forth in such reports by the tenth day of the month following the month in which such contributions were earned by the employees' labor. The Bargaining Agreement and Trust Agreements provide that contributions are delinquent if not paid by the fifteenth day of such latter month. The Corporate Defendants and the Individual Defendants are fully aware of the obligation to timely pay contributions.

56.    Because contributing employers themselves calculate and prepare the monthly reports, the Plans must rely upon the honesty of employers and their accuracy in reporting the hours worked and contributions owed on behalf of their covered employees. To verify the accuracy of the reports, the Plans have at all times maintained and employer compliance examination program pursuant to the Trust Agreements. As a part of this compliance examination program, the Plans' compliance examiners periodically examine the books and payroll records of contributing employers. If a compliance examination reveals that an employer owes contributions to the Plans in excess of the amounts contained in the monthly remittance reports submitted to the Plans, the Plans assess an hourly compliance examination fee, together with other assessments described herein.

57.    The Bargaining Agreement and Trust Agreements provide that if an employer fails to furnish remittance reports on a timely basis, it shall pay the Fund $200 per plan or ten percent of the delinquent contributions, whichever is greater, as a late filing assessment.

In addition, the Bargaining Agreement and Trust Agreements provide that if contributions to the Plans are delinquent, the employer will pay liquidated damages in the amounts of ten percent of the delinquent amount for the first month, and five percent of the delinquent amount for each month thereafter in which the contributions remain delinquent.

58.     Under the Plans' collection procedures, when an employer refuses or fails to submit remittance reports or to comply with an audit, the Plans may accept as accurate an estimate of delinquent contributions calculated on the basis of the employer's historical record of reporting and/or contributions. This figure is computed by multiplying the employer's average monthly contribution rate over the last six months for which the employer submitted reports or for which accurate information exists (or over such shorter period during which the employer was a contributory to the Plans), by the number of months for which the employer is delinquent and the Plans lack reports or accurate information. This procedure was adopted because accurate records of hours worked are in the exclusive possession of the employer and are generally unavailable to the Plans.

59.     The Bargaining Agreement and Trust Agreements provide that an employer will be liable to the Plans for any costs incurred in, or relating to, the collection of any contributions, liquidated damages or late filing assessments due to the Plans, including interest and attorney's fees.

60.     The Bargaining Agreement and Trust Agreements provide that in the event an employer is delinquent in the payment of contributions or liquidated damages to the Plans for a period of fifteen days or more, then such employer shall, upon written notice, be required to furnish to the Plans or their representative all records and other information deemed necessary by the Plans to enable them to file mechanic's liens, stop notices or Miller Act claims on behalf of the affected employees pursuant to applicable state law, in order to collect unpaid compensation owing by the employer. The required information includes identification of each project for which the employer supplied labor or materials, and the number of hours worked by the employer's employees at each job during the months in which the employer was delinquent. The Trust Agreements further provide that

the Plans may require the employer to submit this information to the Plans or their representative on a weekly basis while the employer remains delinquent. The Trust Agreements also acknowledge that the parties recognize that time is of the essence in the filing of the mechanic's liens, stop notices or Miller Act claims and that the employer shall therefore supply such information immediately upon request by the Plans. The Bargaining Agreement further provides that any failure to provide such information by Individual Defendants subjects the officers, directors and shareholders to individual liability.

## THE EMPLOYER'S DELINQUENCIES

61.     The Plans requested that Corporate Defendants submit to a compliance exam for the audit period of June 2013 through December 2018, but the Corporate Defendants refused.

62.     The Corporate Defendants have failed and refused to remit contributions to the Plans for the months of June 2013 through December 2018 and continuing through the date of this complaint. Corporate Defendants are therefore delinquent in their obligations to the Plans for such months in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $166,885.00.

63.     The Corporate Defendants owe liquidated damages for the late payment of contributions for the work months of June 2013 through December 2018 and continuing through the present in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $33,377.00.

64.     The Bargaining Agreement provides for interest to be paid on all delinquent contributions, calculated at the rate of twelve percent (12%) per annum.

65.     The Corporate Defendants owe interest for the delinquent months June 2013 through December 2018 in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $55,072.00.

66.     The Corporate Defendants were timely notified by letter of these delinquencies and they were assessed liquidated damages, and payment of the delinquent contributions and liquidated damages was repeatedly demanded. These letters also

demanded mechanic's lien, stop notice and Miller Act claim information. To date, the Corporate Defendants have failed and refused to pay the contributions and other sums owing to the Plans and has refused to furnish mechanic's lien, stop notice and Miller Act claim information.

67.    The Corporate Defendants are fully aware of the obligation to make contributions on behalf of covered work performed by the Company's employees and the obligation to submit accurate remittance reports, as set forth herein, and is equally aware of its failure to make such contributions.

## FIRST CAUSE OF ACTION:
## AGAINST DEFENDANTS FOR INJUNCTIVE RELIEF AND DAMAGES FOR BREACH OF BARGAINING AGREEMENT

68.    The Plans repeat and reaver each and every averment contained in paragraphs 1 through 67 above as if set forth in full.

69.    Defendants' failure to pay such contributions and other sums on the dates on which such contributions and other sums were due are violations of the Bargaining Agreement. As a direct result, Defendants have become indebted to the Plans for contributions and other sums and will become indebted to the Plans for additional contributions and other sums, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $166,885.00.

70.    Defendants' failure to submit mechanic's lien, stop notice and Miller Act claim information to the Plans is a violation of the Bargaining Agreement. As a direct result of Defendants' failure to furnish mechanic's lien, stop notice and Miller Act information to the Plans, the Plans have been damaged in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $255,334.00.

71.    The Plans are informed and believe, and based upon such information and belief aver, that additional delinquencies have occurred both before and after the date of this complaint, and that such delinquencies are continuing. As a direct result, Defendants

have become and will become indebted to the Plans for additional contributions and other sums in an amount which is presently unknown to the Plans, but which the Plans will establish by proof at the time of trial.

72.     The Plans are informed and believe, and based upon such information and belief aver, that Defendants have threatened not to pay, and will refuse or fail to pay, future contributions to the Plans, and that it will thereby create future unpaid delinquencies during the remaining term of the Bargaining Agreement. Unless Defendants are enjoined from failing to make such contributions, furnishing such remittance reports and providing such mechanic's lien, stop notice and Miller Act claim information, as described above, the Plans will suffer irreparable injury for which there is no adequate remedy at law since, among other things, the brief period of time in which mechanic's liens, stop notices and Miller Act claims must be recorded or filed will expire, and additionally, the Plans will be required to bring a multiplicity of actions at law to recover such delinquencies as they occur, to the Plans' great expense and hardship. On that basis, the Plans seek injunctive relief requiring Defendants to timely pay contributions, and to timely furnish remittance reports and mechanic's lien, stop notice and Miller Act claim information for construction projects.

### SECOND CAUSE OF ACTION:
### AGAINST DEFENDANTS FOR INJUNCTIVE RELIEF
### AND DAMAGES FOR BREACH OF TRUST AGREEMENTS

73.     The Plans repeat and reaver each and every averment contained in paragraphs 1 through 72 above as if set forth in full.

74.     Defendants' failure to pay such contributions and other sums on the dates on which such contributions and other sums were due are violations of the Trust Agreements. As a direct result, Defendants have become indebted to the Plans for contributions and other sums, and will become indebted to the Plans for additional contributions and other sums, in an amount which is presently unknown to the Plans, but which the Plans will

establish by proof and at present is in excess of $166,885.00.

75.   Defendants' failure to submit mechanic's lien, stop notice and Miller Act claim information to the Plans is a violation of the Trust Agreements.  As a direct result of Defendants' failure to furnish mechanic's lien, stop notice and Miller Act information to the Plans, the Plans have been damaged in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $255,334.00.

76.   The Plans are informed and believe, and based upon such information and belief aver, that Defendants have threatened not to pay, and will refuse or fail to pay, future contributions to the Plans, and that it will thereby create future unpaid delinquencies during the remaining term of the Bargaining Agreement. Unless Defendants are enjoined from failing to make such contributions, furnishing such remittance reports and providing such mechanic's lien, stop notice and Miller Act claim information, as described above, the Plans will suffer irreparable injury for which there is no adequate remedy at law since, among other things, the brief period of time in which mechanic's liens, stop notices and Miller Act claims must be recorded or filed will expire, and additionally, the Plans will be required to bring a multiplicity of actions at law to recover such delinquencies as they occur, to the Plans' great expense and hardship. On that basis, the Plans seek injunctive relief requiring Defendants to timely pay contributions, and to timely furnish remittance reports and mechanic's lien, stop notice and Miller Act claim information for construction projects.

**THIRD CAUSE OF ACTION:**

**AGAINST DEFENDANTS FOR INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATION OF ERISA**

77.   The Plans repeat and reaver each and every averment contained in paragraphs 1 through 76 above as if set forth in full.

78.   By engaging in the acts described above, Defendants have violated the terms of the Plans, and thereby have violated certain provisions of ERISA including Section 515,

29 U.S.C. § 1145. As a direct result, Defendants have become indebted to the Plans for contributions and other sums, and will become indebted to the Plans for additional contributions and other sums, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $255,334.00.

79.     The Plans are informed and believe, and based upon such information and belief aver, that Defendants have threatened not to pay, and will refuse or fail to pay, future contributions to the Plans, and that it will thereby create future unpaid delinquencies during the remaining term of the Bargaining Agreement. Unless the Defendants are enjoined from failing to make such contributions, furnishing such remittance reports and providing such mechanic's lien, stop notice and Miller Act claim information, as described above, the Plans will suffer irreparable injury for which there is no adequate remedy at law since, among other things, the brief period of time in which mechanic's liens, stop notices and Miller Act claims must be recorded or filed will expire, and additionally, the Plans will be required to bring a multiplicity of actions at law to recover such delinquencies as they occur, to the Plans' great expense and hardship. On that basis, the Plans seek injunctive relief requiring Defendants to timely pay contributions, and to timely furnish remittance reports and mechanic's lien, stop notice and Miller Act claim information for construction projects.

80.     Because Defendants acted with malice, oppression and conscious disregard of the rights of the Plans, the Plans are entitled to an award of punitive damages as an appropriate legal remedy available under Section 502(g)(2)(E) of ERISA, 29 U.S.C. § 1132(g)(2)(E), in an amount deemed appropriate by the Court.

## FOURTH CAUSE OF ACTION:

## THE CORPORATE DEFENDANTS ARE ALTER EGOS OF ONE ANOTHER

81.     The Plans repeat and reaver each and every averment contained in paragraphs 1 through 80 above as if set forth in full.

82.     The Plans are informed and believe, and on the basis of such information and

belief aver, that at all times material to this Complaint MTB, LLC. and MTB, INC. held themselves out as continuations of MTB CORP.

83.     The Plans are informed and believe, and on the basis of such information and belief aver, that at all times material to this Complaint MTB CORP., MTB, INC., and MTB, LLC. were affiliated business enterprises with a unity of interest and business purpose and operated as a single employer.

84.     All three Corporate Defendants share a common address, phone number, and fax number.

85.     All three Corporate Defendants share a common logo, which reads only, "Mechanical Test & Balance" with no distinction between "Corp.", "Inc.", or "LLC."

86.     All three Corporate Defendants are fully or partially owned by Individual Defendant ARONE.

87.     The Plans are informed and believe, and on the basis of such information and belief aver, that the Corporate Defendants share many of the same officers and shareholders and are dominated by the same individuals.

88.     The Plans are informed and believe, and on the basis of such information and belief aver, that the Corporate Defendants share the same head of labor relations

89.     The Plans are informed and believed, and on the basis of such information and belief aver, that the Corporate Defendants share the same employees who manage job assignments for the same employees at all three Corporate Defendants.

90.     The Plans are informed and believe, and on the basis of such information and belief aver, that the Corporate Defendants share clerical workers including an office manager.

91.     The Plans are informed and believe, and on the basis of such information and belief aver, that the Corporate Defendants share common premises, phone number, facilities, and equipment.

92.     The Plans are informed and believe, and on the basis of such information and belief aver, that the Corporate Defendants have shared credit and extended interest-free

loans to one another.

93. MTB CORP. became signatory to the Bargaining Agreement in 2006 which obligates MTB CORP. to contribute money to the Plans commensurate with the number of hours its covered employees work, as alleged above. Individual Defendant ARONE executed the Bargaining Agreement on behalf of MTB CORP.

94. MTB CORP.'s license was permanently revoked by the Nevada Secretary of State in 2010.

95. Defendant ARONE incorporated MTB, INC. in 2008 and operated it as a continuation of MTB CORP.

96. MTB, INC.'s license was revoked by the Nevada Secretary of State in 2016.

97. Defendant ARONE incorporated MTB, LLC. in February 2013 and operated it as a continuation of MTB CORP. and MTB, INC.

98. On August 15, 2013, Defendant ARONE sent a letter to the Plans representing to them that "Mechanical Test and Balance" had stopped performing work covered by the Bargaining Agreement as of June 2013.

99. In fact, MTB, LLC continued to perform work covered by the Bargaining Agreements from June 2013 through December 2018.

100. The Plans are informed and believe, and on the basis of such information and belief aver, that MTB, INC. and MTB, LLC were used in a sham effort to avoid MTB CORP.'s collective bargaining obligations.

101. Based upon the facts alleged above, the Corporate Defendants have common ownership, common management, interrelation of operations, centralized control over labor relations, and MTB, INC. and MTB, LLC were used in a sham effort to avoid collective bargaining obligations. Thus, the Corporate Defendants are alter-egos of one another and hence are jointly liable for contribution obligations to the Plans described above. As alter-egos, the Corporate Defendants are also jointly liable for work done by any of them in an effort to avoid contribution obligations. As a direct result, Defendants have become indebted to the Plans for contributions and other sums, and will become indebted

to the Plans for additional contributions and other sums, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $255,334.00.

### FIFTH CAUSE OF ACTION:
### MTB, LLC. IS A SUCCESSOR EMPLOYER OF
### MTB, INC. AND MTB CORP.

102.    The Plans repeat and reaver each and every averment contained in paragraphs 1 through 101 above as if set forth in full.

103.    The Plans are informed and believe, and based on such information and belief aver, that in or about May 2013, after transferring work from MTB, INC. and MTB CORP. to MTB, LLC., the shareholders shut down MTB CORP. and MTB, INC.

104.     By virtue of the fact that MTB, LLC. is a mere continuation of MTB CORP. and MTB, INC.'s business interests and assets, MTB, LLC. is liable for the debts and obligations of MTB CORP. and MTB, INC. and is therefore in breach of the Bargaining Agreement and Trust Agreement for failure to cooperate with a compliance examination to ensure proper fringe benefit contributions and failure to make such contributions in amount to be determined at trial according to proof.  As a direct result, Defendants have become indebted to the Plans for contributions and other sums, and will become indebted to the Plans for additional contributions and other sums, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $255,334.00.

### SIXTH CAUSE OF ACTION:
### INDIVIDUAL DEFENDANTS ARE LIABLE FOR THE CORPORATE
### DEFENDANTS' UNPAID CONTRIBUTIONS AND ATTENDANT DAMAGES
### ("PIERCING THE CORPORATE VEIL")

105.    The Plans repeat and reaver each and every averment contained in paragraphs

1 through 104 above as if set forth in full.

106.   The Plans are informed and believe, and on the basis of such information and belief aver, that by signing the Bargaining Agreement, Corporate Defendants became eligible for some contracts and economic opportunities that they would not otherwise have been permitted to bid on.

107.   The Plans are informed and believe, and on the basis of such information and belief aver, that at the time MTB CORP. entered into the Bargaining Agreement, the Individual Defendants knew that it would give Corporate Defendants access to new contracts and economic opportunities.

108.   The Plans are informed and believe, and on the basis of such information and belief aver, that at the time the Corporate Defendants entered into the Bargaining Agreement with Local 88, the Individual Defendants knew that the Corporate Defendants could not afford to make the contributions required by the Bargaining Agreement and the Trust Agreements.

109.   The Plans are informed and believe, and on the basis of such information and belief aver, that at the time MTB CORP. entered into the Bargaining Agreement with Local 88, the Individual Defendants knew that MTB CORP.'s employees, including the Individual Defendants themselves, would be entitled to benefits from the defined benefit Pension Plan even if Corporate Defendants did not meet their obligation to contribute.

110.   The Plans are informed and believe, and on the basis of such information and belief aver, that at relevant times Corporate Defendants lacked the income or capital to meet their obligation to contribute under the Bargaining Agreement and the Trust Agreements.

111.   Upon entering into the Bargaining Agreement, Corporate Defendants' obligation to contribute was foreseeable and could reasonably be expected to arise within the course of its business.

112.   A company's "corporate veil" should be pierced and its shareholders held personally liable for the company's debts if (1) they failed to respect the corporate form;

(2) limitation of shareholder liability would visit injustice upon the litigants; and (3) the shareholders either had fraudulent intent when they incorporated the company, or they engaged in a deliberate misuse of the corporate form.

113.   The Individual Defendants' previously-alleged conduct, including but not limited to their failure to hold regular corporate meetings, their failure to keep minutes of meetings, their failure to retain enough capital to meet regular and foreseeable contributions, their failure to keep complete records of monetary transfers between personal and Corporate accounts, their treating of Corporate Defendants' assets as their own, their decision making in the absence of a board meeting constitutes sufficient disregard of the corporate form to hold them individually liable.

114.   The Individual Defendants' previously-alleged conduct, including but not limited to their knowledge that MTB CORP. could not afford its obligations under the Bargaining Agreement, their knowledge that by entering MTB CORP. into the Bargaining Agreement at least one Individual Defendant would personally and individually be entitled to benefits from the Plan, their knowledge that by signing the Bargaining Agreement, MTB CORP. would gain access to new economic opportunities and contracts, and their failure to maintain adequate capitalization to meet their contribution obligations while continuing to submit remittance reports, constitutes sufficient misuse of the corporate form to justify holding the Individual Defendants personally liable.

115.   The fact that MTB CORP. was incapable of meeting its obligations when it entered into the Bargaining Agreement, that MTB CORP. was unable to meet debts that were reasonably foreseeable in the normal course of business, and that the Individual Defendants knew this constitute sufficient injustice to justify holding the Individual Defendants personally liable.

116.   In sum, Individual Defendants used the Corporate Defendants in a scheme to avoid responsibility for contributions due to the Plans.

117.   For the reasons stated above, the Individual Defendants cannot take advantage of the corporate form's limit on liability and are, therefore, personally liable for all amounts

owed to the Plans.  As a direct result, Defendants have become indebted to the Plans for contributions and other sums, and will become indebted to the Plans for additional contributions and other sums, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $255,334.00.

**PLAINTIFFS THEREFORE PRAY JUDGMENT AGAINST DEFENDANTS AS FOLLOWS:**

As to All Causes of Action:

1.     That the Court restrain and enjoin Defendants, for so long as they remain contractually and legally bound to make payments of contributions to the Plans, from failing or refusing:

      (1)     to make payments of contributions to the Plans on the dates on which they fall due;

      (2)     to submit to the Plans any remittance reports required from contributing employers on the dates on which they fall due; and,

      (3)     to submit to the Plans any and all information deemed necessary by the Plans to enable Defendants' employees or their representative(s) to file mechanic's liens, stop notices and Miller Act claims.

2.     For payment of delinquent contributions from Defendants for all months that Defendants are delinquent at the time of trial, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $166,885.00.

3.     For payment of liquidated damages from Defendants at the time of trial, an amount presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $33,377.00.

4.     For reasonable attorney's fees and costs of suit from Defendants.

5.     For prejudgment interest pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and post-judgment interest in accordance with the Bargaining Agreement,

the Trust Agreements and law, an amount presently estimated to be in an amount presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $55,072.00.

As to Cause of Action 3 Only:

6.     For payment of punitive damages from the Defendants in an amount deemed appropriate by this Court.

As to Causes of Action 4 and 5:

7.     That MTB, INC. and MTB, LLC. be jointly liable with MTB CORP. for all relief prayed for in this Complaint.

As to Cause of Action 6:

8.     That Individual Defendants be held jointly liable with MTB CORP., MTB, INC., and MTB, LLC. for all relief prayed for in this Complaint.

As to All Causes of Action:

9.     For such other and further relief as to this Court may seem just and proper.

Dated:  June 25, 2019                    Respectfully submitted,

**GILBERT & SACKMAN**
A Law Corporation


By:   /s/ Benjamin M. O'Donnell
        Benjamin M. O'Donnell
        *Attorneys for Plaintiffs*